IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BANCORP, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
|  | : | |
| v. | : | |
|  | : | NO. 14-7159 |
| MICHAEL YARON, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

P<small>RATTER</small>, J.                                                                                                           A<small>UGUST</small> 13, 2015

Bancorp, Inc., alleges that Michael Yaron, Harrise Yaron, and Jarred Yaron, acting through several corporations, and with the assistance of the accounting firms of Friedman, LLP, and Bagell, Josephs, Levine & Co., fraudulently induced Bancorp to lend millions of dollars to Michael Yaron and his business empire. When the curtain on the Yaron family's "Ponzi" scheme was drawn back, that money had disappeared. Bancorp hopes to recover damages for its losses incurred as a result of the fraud allegedly perpetrated by the defendants. Bancorp initiated this action in state court against Michael Yaron, several members of his family, and the accounting firms who allegedly helped him and his business enterprises overstate their assets and, thereby, obtain further financing from Bancorp. Bancorp brings claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and various state law causes of action, including fraud and negligent misrepresentation.

The defendant accounting firms ("Removing Defendants") removed this action to this Court, asserting that the federal court has subject matter jurisdiction over the case by virtue of the RICO claims at issue. Bancorp now seeks to have the case remanded to state court because not all defendants consented to removal. Specifically, defendants Michael Yaron, Harrise Yaron,

Jarred Yaron, 218 Arch Street, L.P., Oxford Construction Development Corp., Oxford Construction of Pennsylvania, Inc., Cambridge Environmental & Construction Corp., and 218 Arch Street, LLC, did not consent.

This is not the first action involving Bancorp and members of the Yaron family. Earlier litigation, referred to by the parties as the "Berger litigation," ended with a settlement agreement between Bancorp, Harrise Yaron, Jarred Yaron, and Jennifer Parks née Yaron. *See* Compl. Ex. 12 (Doc. No. 1-17) (hereinafter "Settlement Agreement"). This Settlement Agreement, which was attached as an exhibit to the Complaint, is the subject of much of the current disagreement over whether removal was proper. In particular, Removing Defendants argue that the Settlement Agreement unambiguously renders Bancorp's claims against the Yaron family defendants nominal. The Court concludes otherwise and will grant the Motion to Remand.

Defects in procedures for removal to this Court are grounds for remand. *See* 28 U.S.C. § 1447(c). When a case is removed solely on the basis of federal question jurisdiction,[1] "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Thus, failure of all parties to consent to such a removal is a procedural defect warranting remand. *Balazik v. Cnty. of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995). However, consent of a named defendant is not required where (1) the non-consenting defendant is an unknown or nominal party; (2) where a defendant has been fraudulently joined;

---

[1] The case was removed on federal question grounds, though Removing Defendants assert that this case is also removable under diversity jurisdiction. However, because Harrise and Jarred Yaron are citizens of Pennsylvania, the home-state defendant rule would defeat diversity jurisdiction. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). Removing Defendants argue, of course, that Harrise and Jarred Yaron were improperly joined and thus the home-state defendant rule should not apply. This argument turns on the same set of issues as discussed above, and the Court concludes that Removing Defendants have not met their burden of demonstrating that Harrise and Jarred Yaron were fraudulently joined.

or (3) the non-consenting defendant had not been served at the time of removal. *Id.* at 213 n.4. When determining whether removal was proper, it is the removing party's burden to prove the propriety of removal, and "all doubts should be resolved in favor of remand." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992).

The Court concludes it must remand this action because Harrise and Jarred Yaron did not consent to its removal. Removing Defendants argue that they did not need consent from Harrise or Jarred Yaron for removal of this case to federal court because Harrise and Jarred Yaron are nominal parties who were fraudulently joined to this litigation.[2] Both arguments are premised upon the notion that Bancorp has essentially released its claims against Harrise and Jarred Yaron. Although there are a number of curious circumstances surrounding these parties, the Court concludes that Removing Defendants have not met their burden of demonstrating that Harrise and Jarred Yaron are nominal parties or fraudulently joined parties. Remand is therefore appropriate.[3]

---

[2] No challenge has been made to the service effectuated upon Harrise and Jarred Yaron.

[3] Remand on the grounds that the consent of Michael Yaron and the corporate defendants was required is not appropriate, because, as Removing Defendants have demonstrated, neither Michael Yaron nor any of the corporate defendants was properly served and joined in the case at the time of removal. To determine whether Michael Yaron and the corporate defendants were properly served, the Court looks to the Pennsylvania Rules of Civil Procedure governing service of process. *See Hutton v. KDM Transp., Inc.*, No. 14-3264, 2014 WL 3353237, at *3 (E.D. Pa. July 9, 2014).

For removal purposes, Michael Yaron must have been served with the initial pleading—the Complaint. *See DiLoreto v. Costigan*, No. 08-989, 2008 WL 4072813, at *3 n.4 (E.D. Pa. Aug. 29, 2008) ("This Court concludes that the non-service exception to the consent rule applies to any defendant whose removal period has not been triggered [by service of the initial pleading]."). Under Pennsylvania Rule of Civil Procedure 440(a), "service of all legal papers other than original process" may be served by "mailing a copy to the last known address of the party to be served." Pennsylvania Rule of Civil Procedure 440(b) provides that "[s]ervice by mail of legal papers other than original process is complete upon mailing." Here, attached to the Complaint was a Certificate of Service certifying that the Complaint was mailed to Michael Yaron, Fort Dix FCI, 5756 Hartford St. Fort Dix, NJ 08640. Typically, upon mailing the complaint, a presumption of that Michael Yaron received the Complaint would arise. *See In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 304 (3d Cir. 2002) ("The common law has long

recognized a presumption that an item properly mailed was received by the addressee."). However, the Complaint here was not mailed to the correct address for Michael Yaron, because the address used did not match the address listed on FCI Fort Dix's website for sending mail to prisoners. In particular, the Fort Dix website directs that correspondence sent to inmates should include the inmate's registration number and also be sent to P.O. Box 2000 rather than 5756 Hartford Rd. Bancorp asserts that this difference is merely one of formatting and argues that because the Complaint was not returned as undeliverable, the address used is presumably functional. But then, in a footnote, Bancorp undermines its own argument by noting that "two *other* documents Bancorp has sent to Michael Yaron at the allegedly 'improper' FCI Fort Dix address *have* been returned as undeliverable. But not the Complaint, which was delivered." *See* Feb. 27, 2015 Letter from Neal R. Troum, Esquire (Doc. No. 23) (emphasis in original). This footnote makes clear to the Court that the 5756 Hartford Road address is not a correct address for Michael Yaron, and, therefore, the presumption that a mailed letter was received does not arise.

Likewise, the consent of the corporate defendants was not required, as they too were not properly served. As previously noted, only defendants properly served with the Complaint must consent to removal. Among the corporate defendants, the Complaint was served only upon 218 Arch Street, L.P. 218 Arch Street, L.P. was nevertheless not properly served because service of original process upon 218 Arch Street was defective. The manner in which original process may be served in Pennsylvania is governed by Pennsylvania Rule of Civil Procedure 402. Bancorp contends that service upon 218 Arch Street, L.P., was made under part (b) of Rule 402, which provides that, "In lieu of service under [Rule 402(a)], the defendant or his authorized agent may accept service of original process by filing a separate document which shall be substantially in the [form set forth in the rules]." Bancorp points to an entry on the state court docket, dated November 21, 2014, as complying with Rule 402(b)'s requirements for service of process. Bancorp filed on the docket an "affidavit of service" which read, "I, Neal R. Troum, hereby certify that on November 20, 2014, I served via email a copy of the writ of summons on Gavin Lentz, Esquire, counsel for Harrise Yaron, who is authorized to accept service on behalf of 218 Arch Street, L.P. Mr. Lentz accepted service of same on behalf of 218 Arch Street, L.P."

This affidavit is insufficient to effectuate proper service upon 218 Arch Street, L.P. Rule 402(b) requires that the "defendant or his authorized agent" must file the acceptance of service form. Where, as here, a *plaintiff* files an affidavit describing service upon a defendant's authorized agent, service under Rule 402(b) has not been effectuated. Rule 402(b) protects a defendant by requiring any individual purporting to be the defendant's authorized agent to expressly swear to that authorization on the docket. Pennsylvania courts have routinely rejected the notion that service can be effectuated under Rule 402(b) without an acceptance of service form filed by the defendant or his authorized agent. *See, e.g.*, *Cmiech v. Electrolux Home Products, Inc.*, 520 F. Supp. 2d 671, 676 (M.D. Pa. 2007) ("In light of the fact that Plaintiffs did not follow up when defense counsel never returned the form accepting service on behalf of Defendant Electrolux, and in light of the Supreme Court's holding in *Murphy Brothers* that mere receipt of the complaint, without service of process bringing a defendant within the authority of the court, there is insufficient activity to trigger the time limitation of § 1446(b), I conclude that Defendant Electrolux was not served until defense counsel finally accepted service on its behalf on August 7, 2007."); *U.K. LaSalle, Inc. v. Lawless*, 618 A.2d 447, 449-50 (Pa. Super. Ct. 1992) ("The rule simply does not authorize service of initial process upon a defendant by either handing or mailing a copy thereof to the lawyer who happens to represent the defendant in a separate action. Indeed, the proposition that a lawyer who has filed an action on behalf of a client

4

A nominal party is a party that is "without a real interest in the litigation." *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991). Nominal parties tend to be formal parties without any stake in the outcome of the litigation, such as a now-extinct corporation that has been entirely dissolved into another, surviving corporation. *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 359 (3d Cir. 2013). Fraudulent joinder occurs when defendants are joined

---

can thereafter be served as agent for the client in a separate action has been rejected uniformly by the trial courts in this Commonwealth."); *Serrino v. Cty. of Luzerne Tax Claim Bureau*, No. 2014 C.D. 2012, 2013 WL 2952312, at *5 (Pa. Commw. Ct. Aug. 1, 2013) ("The validity of service is not presumed; the return of service itself must demonstrate that the service was made in conformity with the Pennsylvania Rules of Civil Procedure. . . . The return of service contains no explanation whatsoever as to Ms. Weaver's relationship to Owner and why service on her was valid. The return also does not include an 'Acceptance of Service' form as set forth in Rule 402(b) . . . ."); *City of Phila. v. Berman*, 863 A.2d 156 (Pa. Commw. Ct. 2004) ("Moreover, we note that Pa. R.C.P. No. 402(b) contemplates that where service of original process will be made on an authorized agent such as an attorney, the attorney must have express authority to accept such service, which authority will be evidenced by filing a separate document.").

    The Court inquired of Bancorp for authority for its proposition that this affidavit of service was adequate. Bancorp submitted an affidavit, dated June 29, 2015, from Mr. Lentz, certifying that he was an authorized agent for 218 Arch Street, L.P., as of the date he was served with the writ of summons. Bancorp argues that this affidavit, executed months after the complaint was served upon the moving defendants, allows the Court to conclude that 218 Arch Street, L.P., was properly served when Mr. Lentz accepted the writ of summons via email. Bancorp cites the case of *McCreesh v. City of Philadelphia*, 888 A.2d 664 (Pa. 2005), for the notion that a technical deficiency in service, like the failure to file a timely acceptance of service form, will not defeat the effectiveness of service. This interpretation misreads *McCreesh*. In *McCreesh*, the Pennsylvania Supreme Court addressed whether the statute of limitations would continue to run where a defendant had not been properly served because of a technical deficiency in service, but had been given actual notice of the pending lawsuit. *Id.* at 674. The Court concluded that "[n]either our cases nor our rules contemplate punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice." *Id.* Thus, *McCreesh* does not support Bancorp's position because *McCreesh*'s holding turns on the interpretation of the statute of limitations—not on the validity of the service of process. *Accord. Dougherty v. Snyder*, No. 1:CV-10-1071, 2010 WL 3168323, at *4 (M.D. Pa. July 29, 2010) ("The validity of service of process was not an issue in [*McCreesh*]."). Whether a defendant must consent to removal turns upon whether that defendant was validly served with process. In Pennsylvania, "[t]he rules relating to service of process must be strictly followed." *Sharp v. Valley Forge Med. Ctr. & Heart Hosp., Inc.*, 221 A.2d 185, 187 (Pa. 1966). Because those rules were not followed here, none of the corporate defendants was served with process, and, therefore, their consent to removal was not required.

    Thus, the Court must conclude that the consent of neither Michael Yaron nor the corporate defendants was required for removal of this action, because neither party was properly served.

merely for the purpose of defeating removal, as there is "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liab. Litig.*, 220 F. Supp. 2d 414, 419 (E.D. Pa. 2002) (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990)). The burden of proving fraudulent joinder is a "heavy one," and the Court "must resolve all contested issues of substantive fact in favor of plaintiff." *Id.* at 419-20 (quoting *Wilson v. Republic Iron & Stell Co.*, 257 U.S. 92, 111 (1921)).

As for the first portion of the fraudulent joinder analysis, which overlaps largely with the analysis for determining whether a party is nominal, the Court must accept as true all allegations in the Complaint, and "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident [or non-consenting] defendants, the federal court must find that joinder was proper and remand the case to state court." *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006). With respect to the second portion of the fraudulent joinder analysis—namely, whether a party intends in good faith to prosecute the action against the non-consenting defendant—the Court can look beyond the pleadings "to identify indicia of fraudulent joinder." *Id.* at 219. However, "a district court must not step from the threshold jurisdictional issue into a decision on the merits." *Id.* (quotation marks omitted).

Here, Bancorp's Complaint asserts a cause of action against Harrise and Jarred Yaron. Harrise and Jarred Yaron are alleged to have conspired to defraud Bancorp by overstating the assets and financial condition of the enterprises they owned and operated with Michael Yaron. This allegedly caused Bancorp to continue lending money to the Yaron family and their business entities. As a result, Bancorp's recovery on its loans was far less than it otherwise would have

been. Harrise and Jarred Yaron are colorably alleged to have violated federal racketeering laws through their pattern of defrauding Bancorp.

Removing Defendants argue that Bancorp cannot assert a claim against Harrise and Jarred Yaron because Bancorp has entered into a Settlement Agreement with them. The Settlement Agreement is mentioned in a footnote in the Complaint, in which Bancorp notes that "[s]o long as Jarred and Harrise continue to cooperate and do not provide any untruthful testimony or hide documents or information, Bancorp may pursue claims against them (as it has herein), but under certain circumstances it may not enforce any judgments obtained against them." Compl. ¶ 24 n.1. The Court must decide, therefore, whether the Settlement Agreement, which was attached as an exhibit to the Complaint, makes Harrise and Jarred Yaron nominal or fraudulently joined parties, because it prevents Bancorp from presenting colorable claims against them.

The Court concludes that the Settlement Agreement does not necessarily defeat Bancorp's claims. The release provision in the Settlement Agreement states that "upon full and complete satisfaction of the obligations of [Harrise and Jarred Yaron] set forth in this agreement, [Bancorp] shall deliver to [Harrise and Jarred Yaron] a full release including a discharge under a guaranty or for a deficiency claim against [Harrise and Jarred Yaron], with respect to the Indebtedness and the Loan Documents." Settlement Agreement ¶ 6.1. This release provision adds only more ambiguity to the relationship between Bancorp and Harrise and Jarred Yaron. The release appears to pertain to Harrise and Jarred Yaron's debts on the loans from Bancorp— that is, Bancorp appears to be releasing its claim to recover the full amount it is owed on the debts accrued by Harrise and Jarred Yaron. Left open is whether Bancorp has released its claims for acts of fraud in obtaining and maintaining the loans from Bancorp. To know whether these

claims have been released, the Court would need to examine the language of the "full release" Bancorp contracted to provide Harrise and Jarred Yaron should they cooperate with their obligations under the Settlement Agreement. The Court cannot do so, however. The Court does not know whether Bancorp has, in fact, delivered a "full release" to Harrise and Jarred Yaron, as no release has been provided to the Court and the factual circumstances relating to any such release are not alleged.

Thus, the Court cannot conclude based upon the Complaint and the evidence presented that Harrise and Jarred Yaron have been released from the claims at issue here. Moreover, all of this assumes that the "full release" Bancorp intends to deliver is a tangible document, as opposed to some intangible agreement. Even if the Court were to assume that the "full release" Bancorp promised to deliver was an intangible agreement not to file suit, the Court would still have to find ambiguous the contours of such a release, which would necessitate remand because resolving such an ambiguity would be a step beyond the limited threshold jurisdictional inquiry the Court can conduct here. *Cf. Donau Furnier, GmbH v. M & T Veneer Corp.*, 715 F. Supp. 2d 604, 608 (M.D. Pa. 2010) ("Although the intent of the parties to a contract is normally a question for the court, . . . it becomes a jury question if it is ambiguous and its resolution depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence."). The Court must conclude, therefore, that Bancorp has stated a claim against Harrise and Jarred Yaron.

This leaves the issue of whether Bancorp intends in good faith to prosecute this action against Harrise and Jarred Yaron. Removing Defendants have pointed to some suspicious circumstances. In the Settlement Agreement, Harrise Yaron appears to agree "on her own behalf and on behalf of all Entity Obligors" not to "remove or consent to removal of [any lawsuit

against Bancorp] to federal court." *See* Mot. to Remand, Ex. Q ¶ 7.3(ii). Moreover, Counsel for Harrise Yaron and the corporate defendants wrote in an email to counsel for Removing Defendants that "we cannot consent as I agreed under our settlement agreement which is attached to the complaint that they call the shots in the litigation as we are merely nominal parties." Mot. to Remand Ex. W (Doc. No. 5-2). This message does not, however, convince the Court that Harrise and Jarred Yaron are nominal or fraudulently joined to defeat removal.

First, simply because counsel believes that his clients are nominal does not necessarily make it true. As previously explained, the release provision in the Settlement Agreement does not unambiguously release Bancorp's claims against Harrise and Jarred Yaron. It is up to Bancorp, not counsel for the corporate defendants, to decide whether Bancorp will pursue claims against Harrise and Jarred Yaron, and Bancorp has represented that it intends to do so, with the expectation that Harrise and Jarred Yaron will defend themselves. *See* Suppl. Mem. in Supp. Mot. to Remand 5 (Doc. No. 19) ("Bancorp thus expects all named Defendants to mount a defense to this case or suffer a default."). Second, while the Settlement Agreement does appear to hinder Harrise Yaron's ability to take certain actions such as, perhaps, consenting to removal, *see* Settlement Agreement ¶ 7.3(ii), this provision, even if enforceable in this litigation, would merely act as a forum selection clause. Establishing fraudulent joinder requires showing more than that certain parties cannot and will not consent to removal—it must also be shown the plaintiff does not intend to prosecute its action in good faith against those parties. *Cf. Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 32 (3d Cir. 1985) ("The fact that the plaintiffs' motive for joining a Doe defendant is to defeat diversity is not considered indicative of fraudulent joinder.").

9

Finally, Removing Defendants note that Bancorp appears to doubt whether, if it obtains a judgment against Harrise and Jarred Yaron, it will be able to collect monetary damages against them. However, the relevant inquiry is whether Bancorp intends to obtain a judgment against Harrise and Jarred Yaron, not whether the damages obtained are ultimately collectible. *See McCarthy v. Hamilton Farm Golf Club, LLC*, No. CIV. 11-1565, 2011 WL 1775728, at *4 (D.N.J. May 9, 2011) ("Nonetheless, we are guided by the reasoning of other district courts that a plaintiff's intention to obtain a judgment against a defendant is distinct from that plaintiff's prospect of collecting damages from that defendant."); *see also Chicago, R.I. & P. Ry. Co. v. Schwyhart*, 227 U.S. 184, 193 (1913) ("Again, the motive of the plaintiff, taken by itself, does not affect the right to remove. If there is a joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish to assert the right."). Moreover, obtaining a judgment against a defendant for fraud can have significance beyond whether the judgment is collectible; for example, loans obtained by fraud are not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(2)(A); *see also In re Jacobs*, 381 B.R. 128, 142 (Bankr. E.D. Pa. 2008) ("The doctrine of collateral estoppel is applicable in bankruptcy proceedings under 11 U.S.C. § 523(a) involving the dischargeability of a debt.").

Ultimately, the Court, despite noting certain unconventional aspects of the relationship between Bancorp and Harrise and Jarred Yaron, must rule in favor of remand. The Complaint states a colorable claim against Harrise and Jarred Yaron, and Removing Defendants have not sufficiently demonstrated that Bancorp is not intending in good faith to prosecute this action against Harrise and Jarred Yaron.

Accordingly, the Court finds that the failure to obtain the consent of Harrise and Jarred Yaron to removal of this action to federal court constitutes a defect in removal procedure

warranting remand under § 1447(c). An appropriate order remanding this action accompanies this Memorandum.

BY THE COURT:


 /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE